UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

HEATHER JO FANCHER,               )
                                  )
            Plaintiff,            )
                                  )
v.                                )        No. 2:20-CV-198-TRM-JEM
                                  )
KILOLO KIJAKAZI,[1]               )
Acting Commissioner of Social Security,  )
                                  )
            Defendant.            )

## REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the

Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation

regarding disposition by the District Judge of Plaintiff's Motion for Judgment on the Pleadings

[Doc. 23] and the Commissioner's Motion for Summary Judgment [Doc. 25].

Heather Jo Fancher ("Plaintiff") seeks judicial review of the decision of the Administrative

Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner").

For the reasons that follow, the Court will **RECOMMEND** that Plaintiff's Motion for Judgment

on the Pleadings [**Doc. 23**] be **GRANTED IN PART and DENIED IN PART**, and the

Commissioner's Motion for Summary Judgment [**Doc. 25**] be **DENIED**.

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration
("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure,
Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

# I.  PROCEDURAL HISTORY

On August 23, 2017, Plaintiff protectively filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. §§ 401–403, and on June 28, 2018, Plaintiff protectively filed an application for supplemental security income benefits pursuant to Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385, claiming a period of disability that began on January 6, 2016, for both applications [Tr. 9, 85–87, 204–11].  After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ [Tr. 85, 104, 140–41].  A hearing was held on September 13, 2019 [Tr. 29–54].  On October 17, 2019, the ALJ found that Plaintiff was not disabled [Tr. 6–22].  The Appeals Council denied Plaintiff's request for review on December 17, 2021 [Tr. 1–5], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on September 23, 2020, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1].  The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

# II.  ALJ FINDINGS

The ALJ made the following findings:

> 1.  The claimant meets the insured status requirements of the Social Security Act through September 30, 2020.
>
> 2.  The claimant has not engaged in substantial gainful activity since January 6, 2016, the alleged onset date (20 CFR 404.1571 *et seq*., and 416.971 *et seq*.).
>
> 3. The claimant has the following severe impairments:  degenerative disc disease; chronic obstructive pulmonary disease (COPD); neuropathy; migraine; obesity; dysmenorrhea; fibromyalgia/chronic pain syndrome; anxiety; depression; diabetes; episodic mood

2

disorder; osteoarthritis. (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except push and/or pull are limited to occasional in the bilateral upper extremities; can climb ramps/stairs occasionally but never climb ladders, ropes, or scaffolds; can balance, stoop, kneel, crouch, and crawl occasionally; reaching overhead in the bilateral upper extremities is limited to occasional; should avoid more than occasional exposure to vibration and environmental conditions; avoid all exposure to unprotected heights, moving mechanical parts, and other workplace hazards; can maintain concentration, persistence, and pace for simple tasks with customary breaks and few changes in a routine work setting; can have occasional interaction with the general public, coworkers, and supervisors; should not have exposure to more than moderate noise intensity level or bright lights.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on December 9, 1972 and was 43 years old, which is defined as a younger individual age 18–44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

3

11. The claimant has not been under a disability, as defined in the Social Security Act, from January 6, 2016, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

[Tr. 11–21].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not

4

high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted).  Rather, substantial evidence "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).  On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived.  *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

## IV.    DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 423(d)(1)(A) and 1382c(a)(3)(A).  An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A) and 1382c(a)(3)(B).

5

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is "based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4)–(5), (b)–(e) and 416.920(a)(4)–(5), (b)–(e). An RFC is the most a claimant can do despite her limitations. §§ 404.1545(a)(1) and 416.945(a)(1). The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff raises three arguments on appeal. First, Plaintiff argues that the ALJ failed to demonstrate that the vocational expert ("VE") actually concurred that the jobs the ALJ found were

available at Step Five were permitted under the ALJ's physical RFC finding. Second, Plaintiff asserts that the ALJ failed to obtain an updated opinion after Plaintiff's cervical spine surgery despite discounting an opinion for being formed prior to that surgery. Third, Plaintiff claims that the ALJ erred in weighing the mental health opinion evidence. Plaintiff maintains that these failures render the ALJ's decision and findings unsupported by substantial evidence. Plaintiff requests that the Court vacate the final decision of the Commissioner and remand this matter for further administrative proceedings.

The Commissioner argues that the ALJ properly relied on the VE's testimony, that the ALJ was not required to obtain an updated opinion as to Plaintiff's cervical spine surgery, and that the ALJ appropriately evaluated the mental health opinion evidence. Thus, the Commissioner requests for her final decision to be affirmed. The Court will address Plaintiff's arguments in turn.

## A.    Vocational Expert's Testimony

Plaintiff argues that the VE's testimony from the disability hearing held on September 13, 2019, was unclear and that the ALJ's reliance on it renders his decision unsupported by substantial evidence. Furthermore, Plaintiff contends that the Commissioner has the burden of proof at Step Five to show "that there is work available in the economy that the claimant can perform" [*Id.* (quoting *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002))]. In addition, Plaintiff asserts that "[s]ubtantial evidence, may be produced through reliance on the testimony of a [VE] in response to a hypothetical question, but only if the question accurately portrays [a claimant's] individual physical and mental impairments" [*Id.* (quoting *Howard*, 276 F.3d at 238) (quotation marks omitted)]. Thus, Plaintiff argues that the ALJ failed to satisfy his burden at Step Five because of the confusion in the VE's testimony regarding the pushing/pulling with a concurrent limitation to overhead reaching, and further that this failure means the ALJ's decision lacks the

7

support of substantial evidence.  The Commissioner argues that any confusion at the hearing was

addressed by the ALJ and that Plaintiff's counsel's remarks at the hearing support such a finding.

The Court summarizes the relevant portions of the disability hearing as follows.

> ALJ:   I'd like you to consider a hypothetical person of the same age, education, and work experience as the claimant . . . .  For the first hypothetical, I'd like you to consider a person who can perform a full range of light work, except push and/or pull are limited to occasional in the bilateral upper extremities.
>
> Can climb ramps or stairs occasionally; but could never climb ladders, ropes or scaffolds; can balance, stoop, kneel, crouch, and crawl occasionally.  Reaching overhead in the bilateral upper extremities is limited to occasional.  Should avoid more than occasional exposure to vibration; should avoid more than occasional exposure to environmental conditions; should avoid all exposure to unprotected heights, moving mechanical parts, and other workplace hazards.
>
> Can maintain concentration, persistence, and pace for simple tasks, with customary breaks and few changes in a routine work setting.  Can have occasional interaction with the general public, co-workers, and supervisors.  Given that hypothetical, could this person do any of the claimant's past work, that you have described.
>
> VE:   No.
>
> ALJ:   Would there be other jobs, at the light exertional level, such a person could perform?
>
> VE:   No.
>
> ALJ:   Would there be jobs at any exertional level such a person could perform?
>
> VE:   No.  Not with the push/pull at occasional and the reaching overhead at occasional.  The combination of that would preclude employment.
>
> ALJ:   Okay.  And that is the—just so I'm clear—the bilateral overhead reaching and the push/pull overhead reaching?

VE:     The push/pull, I understand it to be—I understood it to have been lateral, as well.

ALJ:    Well, it's push and/or pull are limited to occasional in the dominant—in the bilateral upper extremities; and reaching overhead in the bilateral upper extremities is limited to occasional. Laterally isn't—it would be intact, under this hypothetical.

VE:     So laterally would not be involved in this hypothetical?

ALJ:    Yes, sir. That's correct.

VE:     Okay.

ALJ:    It would not be involved in that hypothetical.

VE:     Thank you for the clarification. Then that worker would be able to work at the light exertion level.

[Tr. 45–47]. After a few moments, the relevant portion of the hearing resumes.

Plaintiff's Counsel ("PC"):     Your Honor, I just want to clarify. That first hypothetical, with the push/pull occasional, both times, you didn't say overhead. Just standard push/pull?

ALJ:    Push and/or—this is the way that it was asked, just [for clarification's] sake. Push and/or pull are limited to occasional in the bilateral upper extremities.

PC:     Okay. So his first answer with that—Mr. Smith, would've been the same, no work. Correct?

VE:     Well, we had to clarify that question.

PC:     I think the clarification was overhead reaching.

ALJ:    Well, and again, the VE can answer. But my—what I thought I heard was that it was the lateral reach. If lateral reach was occasional, that would eliminate all work. I believe that was the testimony. But, by all means, answer the question, and let's get this clarified.

VE:     So, my second response had to do with the clarification that there was work if it were not about the lateral push and pull.

ALJ:    Lateral push and pull or lateral reach?

9

VE:     I mean, lateral reach.

ALJ:    Okay.

VE:     So that, then, should clarify.

PC:     Okay, if—

ALJ:    And I'll tell you what. Just for a clean record—

VE:     Yes?

ALJ:    —I'm going to run through this hypothetical and let you answer it, okay?

VE:     Very well.

ALJ:    A person who could perform a full range of light work, except push and/or pull is limited to occasional in the bilateral upper extremities; can climb ramps or stairs occasionally, but never climb ladders, ropes of scaffolds. Can balance, stoop, kneel, crouch, and crawl occasionally. Reaching overhead in the bilateral upper extremities is limited to occasional. Should avoid more than occasional exposure to vibration. Should avoid more than occasional exposure to environmental conditions. Should avoid all exposure to all unprotected heights, moving mechanical parts, and other workplace hazards.

Can maintain concentration, persistence, and pace for simple tasks, with customary breaks and few changes in a routine work setting; can have occasional interaction with the general public, co-workers, and supervisors; should not be exposed to more than a moderate noise intensity level, with examples including light traffic or a department store; should not be exposed to bright lights, defined here as anything more than standard indoor ambient lighting.

Now in response to that, you listed three jobs at the light exertional level. And for point of clarification, are the jobs you gave me, in response to that hypothetical, consistent with the DOT and/or your training?

VE:     Consistent to both of those things.

ALJ:    Okay. So, Counsel, does that clarify? I mean obviously, you have the opportunity to ask whatever questions you'd like to ask.

PC:     Oh, it's okay.  Your last two hypotheticals are, basically, my argument in the brief.  Either excessive absenteeism or unable to complete a full workday sitting, standing, walking.

ALJ:    Okay.

[Tr. 50–52].

The Court has reviewed the entirety of the hearing testimony and agrees with the Commissioner that any confusion was resolved.  When considering the ALJ's first hypothetical question, the VE initially assumed that "push and/or pull are limited to occasional in the bilateral upper extremities" included a further limitation of occasional as to lateral reach [*See* Tr. 46–47]. This led the VE to conclude that no jobs would be available for someone with these hypothetical limitations at any exertional level.  However, the VE stated that he understood the push/pull limitation to include lateral reach when answering the question.  The ALJ clarified that his hypothetical was "push and/or pull are limited to occasional in the dominant—in the bilateral upper extremities; and reaching overhead in the bilateral upper extremities is limited to occasional. Laterally isn't—it would be intact, under this hypothetical." [Tr. 46].  For confirmation, the VE then asked, "So laterally would *not* be involved in this hypothetical" [Tr. 47 (emphasis added)], and the ALJ responded, "Yes, sir.  That's correct." [Tr. 47].

The VE had an appropriate understanding of the ALJ's question at that point, and he changed his answer accordingly.  The VE answered "[t]hen that worker would be able to work at the light exertion level[,]" including work as a maid, collector operator, and textile worker [Tr. 47–48].  Plaintiff's counsel asked for further clarification at the hearing, and both the ALJ and the VE reiterated what the point of confusion had been and that it had been properly addressed.  The ALJ and VE confirmed that the VE's answer had initially been premised under the assumption that the hypothetical person's lateral reaching would be limited to occasional, with such a

11

limitation precluding all work at all exertional levels. However, that lateral reach limitation was not intended to be part of the ALJ's hypothetical, and the VE understood that when he changed his answer; thus, the confusion was removed.

In addition, the ALJ asked his hypothetical again to clean up the record and to ensure that the VE's understanding of the question was correct. When the ALJ asked if Plaintiff's counsel agreed that the issue had been clarified and if he wanted to ask more questions, counsel said, "Oh, it's okay. Your last two hypotheticals are, basically, my argument in the brief." [Tr. 52]. Thus, the Court finds that any confusion was appropriately addressed at the hearing. If Plaintiff or her counsel were still confused, they could have asked for additional clarification, but they did not.

Plaintiff does not argue that the ALJ's hypothetical misrepresented her limitations. Instead, Plaintiff argues that the alleged confusion surrounding the VE's testimony tainted the hypothetical, making it unclear whether the VE's testimony precluded work. The Court disagrees. The point of confusion was addressed multiple times at the hearing, and the VE appropriately answered the ALJ's hypothetical question after the confusion was addressed and testified that jobs would be available to an individual with the limitations as set forth in the ALJ's first hypothetical. *See Oddo v. Comm'r of Soc. Sec.*, No. 1:16 CV 2110, 2017 WL 3614464, at *5 (N.D. Ohio July 19, 2017) ("[T]o the extent there was confusion over what the ALJ meant by the wording of the RFC, she clarified what she meant by that wording for the VE at the time of the hearing. With that clarification, the VE opined there would be jobs available to such an individual. This provides substantial evidence to support the ALJ's conclusions that there were jobs Plaintiff could perform." (citing *Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001))). Furthermore, Plaintiff fails to refer to any specific limitations contained within the ALJ's hypothetical that misrepresented her RFC. Thus, the ALJ's reliance on the VE's testimony was appropriate in this case, and Plaintiff's

12

argument that the ALJ has failed to meet his burden of proof at Step Five is without merit. Therefore, this argument does not warrant remanding Plaintiff's case.

**B.      ALJ's Evaluation of the Evidence of Record and Physical RFC Determination**

Plaintiff argues that the ALJ failed to obtain an updated opinion after Plaintiff underwent cervical spine surgery in August 2018 even though he discounted the November 2017 opinion of consultative examiner David McConnell, M.D. ("Dr. McConnell), partially because the opinion predated Plaintiff's surgery. Plaintiff asserts that this failure meant that the ALJ inappropriately relied on his own lay interpretation of the evidence when determining Plaintiff's physical RFC. Plaintiff also contends that the ALJ's consideration of her fibromyalgia limitation was insufficient. Plaintiff argues that these failures render the ALJ's physical RFC determination and his decision to limit her to a reduced range of sedentary work unsupported by substantial evidence.

The Commissioner argues that the ALJ's determination of Plaintiff's RFC need not correspond to a physician's opinion and that he was not required to further develop the record. In addition, the Commissioner argues that Plaintiff's contention that the ALJ impermissibly relied on his own lay interpretation of the evidence when limiting her to sedentary work is without merit because the ALJ properly evaluated the evidence of record, including Plaintiff's treatment records, reported daily activities, and the medical opinions of record. Last, the Commissioner asserts that the ALJ appropriately considered Plaintiff's fibromyalgia.

It is well established that, when evaluating the claimant's RFC, the ALJ is not required to base his RFC findings entirely on a physician's opinion. *See, e.g.*, *Mokbel-Alijahmi v. Comm'r of Soc. Sec.*, 732 F. App'x 395, 401–02 (6th Cir. 2018) ("We have previously rejected the argument that a residual functional capacity determination cannot be supported by substantial evidence unless a physician offers an opinion consistent with that of the ALJ."); *Shepard v. Comm'r of Soc.*

*Sec.*, 705 F. App'x 435, 442–43 (6th Cir. 2017) (rejecting the argument that "the ALJ's [residual functional capacity] lacks substantial evidence because no physician opined that [the claimant] was capable of light work"); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) (rejecting the same argument because "the ALJ is charged with the responsibility of determining the [residual functional capacity] based on her evaluation of the medical and non-medical evidence").

The ALJ considered Dr. McConnell's opinion from April 2016, which was to Plaintiff's August 2018 surgery, which he found to be "somewhat persuasive" [Tr. 16–17]. The ALJ noted, among other things, that Dr. McConnell reported Plaintiff's cervical spine had full range of motion ("ROM") without pain or limitation of motion, her gain and station were normal, and she did not have a handheld assistive device [Tr. 16, 590–92]. The ALJ found this April 2016 opinion "somewhat persuasive" because "[t]he objective findings are generally reflective of the entirety of the record as a whole, aside from some additional imaging of degenerative disc diseases and neuropathy" [Tr. 17]. The ALJ also considered Dr. McConnell's opinion from November 2017 where he again found that Plaintiff had full ROM without pain or limitation of motion in her cervical spine and gait and station were still normal [Tr. 17, 591]. The ALJ found Dr. McConnell's November 2017 opinion to be "somewhat persuasive," as his evaluation occurred prior to Plaintiff's surgery, his opinions overstated her physical capabilities, and his conclusions did not include her degenerative disc disease diagnosis [Tr. 17].

The ALJ noted Plaintiff's objective physical examination from January 2017 "included some restriction of the cervical spine in the lateral planes and positive fibromyalgia trigger point. ROM of the cervical spine was within normal limits, and ankles and feet were normal . . . . and gait and station were normal" [Tr. 17, 892]. In November 2017, an MRI of Plaintiff's cervical

14

spine showed spinal stenosis C5–6 and mild bilateral foraminal narrowing [Tr. 18, 1154–56], and Plaintiff showed normal ROM of the cervical spine and normal gait in a January 18 objective examination [Tr. 18, 1160], and Plaintiff's cervical spine ROM was again observed to be within normal limits in July 2018 [Tr. 18, 1446].

In September 2018, following her surgery, the ALJ noted that Plaintiff complained of pain and was instructed to increase her pain medication dosage, but her gait and station were normal on exam [Tr. 19, 1481–84]. In April 2019, Plaintiff was noted to have a wide-based gait [Tr. 19, 1608]. In July 2019, Plaintiff reported an increase in her back pain after falling two weeks prior to her exam; however, she also reported that her pain was well controlled (rated as a 4/10) on a pain scale prior to her fall [Tr. 19, 1663]. The ALJ determined that this showed "a general improvement in the claimant's physical symptoms, although these appear to have been temporarily exacerbated with the falling from the chair incident" [Tr. 19]. The ALJ found that "[l]imiting the claimant to a reduced range of sedentary work, with additional postural and reaching limitations, takes into account any ongoing physical issues post-surgery" [Tr. 19].

"An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary." *Foster v. Halter*, 279 F.3d 348, 355 (6th Cir. 2001). While the ALJ had no "special, heightened duty to develop the record" in this case because Plaintiff was represented by counsel, *Nabours v. Comm'r of Soc. Sec.*, 50 F. App'x 272, 275 (6th Cir. 2002), the ALJ has the ultimate responsibility to ensure that a claimant receives a full and fair hearing, *Richardson v. Perales*, 402 U.S. 389, 411 (1971), which includes a duty to develop the record fully and fairly, *see Johnson v. Sec'y of Health & Human Servs.*, 794 F.2d 1106, 1111 (6th Cir. 1986). Furthermore, Plaintiff possesses the burden to demonstrate that she suffers from a disabling condition. *Trandafir v. Comm'r of Soc. Sec.,* 58 F. App'x 113, 115 (6th Cir. 2003) (citing

15

20 C.F.R. § 404.1512(a)); *see also Landsaw v. Sec'y of Health & Hum. Servs.*, 803 F.2d 211, 214 (6th Cir. 1986) ("The burden of providing a complete record, defined as evidence complete and detailed enough to enable the [Commissioner] to make a disability determination, rests with the claimant." (internal citation omitted)). It is not error to fail to obtain additional evidence where the record contains a "considerable amount of evidence" pertaining to the claimant's limitations. *Culp v. Comm'r of Soc. Sec.*, 529 F. App'x 750, 751 (6th Cir. 2013).

In any case, "Social Security proceedings are inquisitorial rather than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103, 110–11 (2000) (citing *Richardson v. Perales*, 402 U.S. 389, 400–01 (1971)). While the claimant bears the ultimate burden of establishing that she is entitled to disability benefits, the ALJ has an affirmative duty to develop the factual record upon which his decision rests, regardless of whether or not the claimant is represented by counsel. *See, e.g., Wright–Hines v. Comm'r of Soc. Sec.*, 597 F.3d 392, (6th Cir. 2010) ("This court has also long recognized an ALJ's obligation to fully develop the record." (citation omitted)); *Lashley v. Sec'y of Health and Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983) (stating the ALJ has "the ultimate responsibility for ensuring that every claimant receives a full and fair hearing"). The regulations provide that the agency "may ask [the claimant] to have one or more physical or mental examinations or tests" if the claimant's "medical sources cannot or will not give us sufficient medical evidence" to determine whether the claimant is disabled. 20 C.F.R. § 404.1517.

The Court finds that the record does contain a "considerable amount of evidence" as to this issue and the ALJ's consideration of that evidence was appropriate, including the medical findings both before and after Plaintiff's surgery, Plaintiff's reported activities and ability to manage her pain, and the other opinion evidence. The Court finds that the ALJ's decision to not procure

16

additional testing or expert opinions was well within his discretion here, and the record was sufficiently developed to ensure that Plaintiff received a fair hearing. The record contains physical examinations both before and after Plaintiff's surgery, additional opinion evidence, and Plaintiff's own testimony and reported daily activities, all of which were considered by the ALJ. While there is certainly evidence that could support a finding of greater limitations for Plaintiff, that does not mean the ALJ's decision lacked the support of substantial evidence. Although Plaintiff would interpret the evidence differently, the Court finds that the ALJ's determination was within his "zone of choice." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009) (holding that "[t]he substantial-evidence standard . . . presupposes that there is a zone of choice within which the decisionmakers can go either way" and that as long as substantial evidence supports the ALJ's finding, the fact that the record contains evidence which could support an opposite conclusion is irrelevant (quotations omitted)); *see also Huizar v. Astrue*, No. 3:07-CV-411-J, 2008 WL 4499995, at *3 (W.D. Ky. Sept. 29, 2008) ("While plaintiff understandably argues for a different interpretation of the evidence from that chosen by the ALJ, the issue is not whether substantial evidence could support a contrary finding, but simply whether substantial evidence supports the ALJ's findings.").

In addition, Plaintiff disagrees with the ALJ's ultimate physical RFC finding, arguing that the ALJ's evaluation of Plaintiff's fibromyalgia was insufficient. The Court disagrees. The ALJ found that Plaintiff had, among others the severe impairment of "fibromyalgia/chronic pain syndrome" [Tr. 11]. Despite that finding, the ALJ concluded that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record"

[Tr. 15].

The ALJ considered treatment records relevant to Plaintiff's fibromyalgia, including those of rheumatologist Aqueel M. Kouser, M.D. ("Dr. Kouser"). The ALJ states that "[o]bjective physical examination in January 2017 included some restriction of the cervical spine in the lateral planes and positive fibromyalgia trigger point" [Tr. 17, 892]. On June 28, 2016, Dr. Kouser noted that the results of Plaintiff's extensive laboratory testing were "essentially completely unremarkable" upon review [Tr. 904]. As the Commissioner notes, Plaintiff discusses reports from neurologist Mohammad Hussain, M.D. ("Dr. Hussain"), but omits that Dr. Hussain noted the results of all Plaintiff's diagnostic tests were within normal limits and that there was no electrodiagnostic evidence of neuropathy, radiculopathy, or myopathy [Tr. 1752] when he was investigating Plaintiff's reporting of episodes of losing complete mobility down the right side of her body [Tr. 1751]. Dr. Hussain noted that "[l]ikely the issue is Fibromyalgia" but "[a]dequate medication [was] already on board [and Plaintiff needed] diet exercise and life style adjustment" [Tr. 1752]. Furthermore, Plaintiff's fibromyalgia was noted to be "fairly well controlled with Cymbalta and hydrocodone" [Tr. 959].

The Sixth Circuit has recognized that fibromyalgia may be a "severe impairment." *See, e.g.*, *Preston v. Sec'y of Health & Hum. Servs.*, 854 F.2d 815, 818 (6th Cir. 1998). However, "a *diagnosis* of fibromyalgia does not automatically entitle [a claimant] to disability benefits; particularly . . . where there is substantial evidence to support the ALJ's determination that [the claimant's] fibromyalgia was either improving or, at worst, stable." *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 806 (6th Cir. 2008). The Court finds that even if evidence exists in the record that would support a determination that Plaintiff's severe impairment of fibromyalgia was more limiting that what the ALJ concluded, the existence of such evidence does not negate the ALJ's

18

finding.  As discussed above, the Court finds that substantial evidence exists in the record to support the ALJ's final determination of Plaintiff's physical RFC, and the ALJ's consideration of Plaintiff's fibromyalgia was sufficient in this case.  *See, e.g.*, *Warren v. Comm'r of Soc. Sec.*, 810 F. App'x 445, 448 (6th Cir. 2020) (finding substantial evidence to support ALJ's decision when it was shown that claimant could manage the impact of his fibromyalgia symptoms through medication, among other things (citing *Vance*, 260 F. App'x at 806)).  Thus, Plaintiff's second argument does not warrant a remand of her case.

## C.      ALJ's Weighing of the Mental Health Opinion Evidence

Plaintiff contends that the ALJ improperly weighed the mental health opinion evidence, rendering the mental RFC finding without the support of substantial evidence.  Specifically, Plaintiff argues that the ALJ's decision, in which he found the opinions of Derek Hopko, Ph.D. ("Dr. Hopko"), to be unpersuasive and the opinions of state agency psychiatric consultants Bill Hennings, Ph.D. ("Dr. Hennings"), and M. Candice Burger, Ph.D. ("Dr. Burger") to be persuasive, was contrary to the relevant SSA rules for evaluating opinion evidence.  The Commissioner maintains that the ALJ's evaluations of these opinions was proper and that substantial evidence exists to support the ALJ's final determination of Plaintiff's mental RFC.  The Court finds that the ALJ's analysis of Dr. Hopko's opinion was inappropriate but not for the reasons proffered by Plaintiff.

Plaintiff states that the ALJ is to consider the factors listed at 20 C.F.R. §§ 404.1527(c) & 416.927(c)(3) when evaluating opinion evidence [Doc. 24 at 11].  That is not correct.  Plaintiff's claim for disability insurance benefits was filed on August 23, 2017, and her claim for supplemental security income was filed on June 28, 2018.  Because Plaintiff's claims were both filed after March 27, 2017, the SSA's new regulations for evaluation of medical opinion evidence

19

apply to this claim. *See Revisions to Rules Regarding the Evaluation of Medical Evidence (Revisions to Rules)*, 2017 WL 168819, 82 Fed. Reg. 5844 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c, 416.920c.

Under the new revised regulations, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative findings, including those from your medical sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The Commissioner will "evaluate the persuasiveness" of all medical opinions and prior administrative medical findings using the following factors: 1) supportability; 2) consistency; 3) the source's relationship with the claimant, including length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of the treatment relationship, and examining relationship; 4) the source's specialized area of practice; and 5) other factors that would tend to support or contradict a medical opinion, including but not limited to evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of the agency's disability program's policies and evidentiary requirements. 20 C.F.R. §§ 404.1520c(a), (c)(1)–(5), 416.920c(a), (c)(1)–(5). However, supportability and consistency are the most important factors. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

The revised regulations also set forth new articulation requirements for the ALJs in their consideration of medical opinions, stating:

> **(1) Source-level articulation.** Because many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for us to articulate in each determination or decision how we considered all of the factors for all of the medical opinions and prior administrative medical findings in your case record. Instead, when a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from that medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section,

20

as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative medical finding from one medical source individually;

**(2) Most important factors.** The factors of supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section) are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions or prior administrative medical findings to be. Therefore, we will explain how we considered the supportability and consistency factors for a medical source's medical opinions or prior administrative findings in your determination or decision. We may, but are not required to, explain how we considered the factors in paragraphs (c)(3) through (c)(5) of this section, as appropriate, when we articulate how we consider medical opinions and prior administrative medical findings in your case record;

**(3) Equally persuasive medical opinions or prior administrative medical findings about the same issue.** When we find that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported (paragraph (c)(1) of this section) and consistent with the record (paragraph (c)(2) of this section) but are not exactly the same, we will articulate how we considered the other most persuasive factors in paragraphs (c)(3) through (c)(5) of this section for those medical opinions or prior administrative medical findings in your determination or decision.

20 C.F.R. §§ 404.1520c(b)(1)–(3), 416.920c(b)(1)–(3) (emphasis added); *see, e.g.*, *Kilgore v. Saul*, No. 1:19-CV-168-DCP, 2021 WL 932019, at *11 (E.D. Tenn. Mar. 11, 2021). "Although the new standards are less stringent in their requirements for the treatment of medical opinions, they still require that the ALJ provide a coherent explanation of his reasoning." *White v. Comm'r of Soc. Sec.*, No. 1:20-CV-00588-JDG, 2021 WL 858662, at *21 (N.D. Ohio Mar. 8, 2021).

"Although the RFC must be supported by evidence of record, it need not correspond to, or even be based on any specific medical opinion." *Simon v. Comm'r of Soc. Sec.*, No. 2:16-CV-259, 2017 WL 1017733, at *6 (S.D. Ohio Mar. 16, 2017) (citing *Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015)), *report and recommendation adopted by*, 2017 WL 3172717 (S.D. Ohio July 25, 2017). An ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering the RFC. *Poe v. Comm'r of Soc.*

21

*Sec.*, 342 F. App'x 149, 157 (6th Cir. 2009). With respect to the ALJ's failure to base the RFC on a medical opinion, the Sixth Circuit has recently found that "[n]o bright-line rule exists in our circuit directing that medical opinions must be the building blocks of the residual functional capacity finding, but the administrative law judge must make a connection between the evidence relied on and the conclusion reached." *Tucker v. Comm'r of Soc. Sec.*, 775 F. App'x 220, 226 (6th Cir. 2019).

In his decision, the ALJ found the opinions of state agency consultants Drs. Hennings and Burger to be persuasive [Tr. 19–20]. Both doctors opined that Plaintiff had moderate limitations in understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself [Tr. 93–94, 97–98, 113–14, 119–21]. The ALJ stated that "[t]hese conclusions are supported by the totality of the record as a whole" [Tr. 20]. To support this finding, the ALJ cited to Plaintiff's stopping work due to anxiety and having problems with her coworkers and with physical issues [Tr. 20]. In addition, the ALJ noted that Plaintiff was capable of cooking, doing laundry, shopping, reading, and socializing; her mood and affect had repeatedly been assessed as "normal" throughout the record with changes in mental status typically correlating to specific situational stressors [Tr. 20]. The ALJ also found that these opinions were consistent with the evidence of record and with Plaintiff's own admissions [Tr. 20].

The Court finds that the ALJ properly articulated how he considered the supportability and consistency factors when he evaluated the opinions of the state agency psychological consultants. Furthermore, the ALJ cited to numerous aspects of the record in evaluating these opinions, and the Court finds that substantial evidence supports the ALJ's conclusions.

22

The same cannot be said for the ALJ's analysis of Dr. Hopko's opinion, as the ALJ failed to provide a "coherent explanation of his reasoning" for discounting his opinion. *See White*, 2021 WL 858662, at *21. Specifically, while the ALJ was not required to base his RFC determination on any particular opinion, the ALJ failed to properly explain how he considered the supportability factor for Dr. Hopko's opinions as required by the revised regulations in making this determination. *See id.* ("Here, the ALJ failed to build an accurate and logical bridge from the evidence to his conclusions in his RFC analysis and in his evaluation of the opinions of Drs. Hochman and Vargo."); *see also Palmore v. Comm'r of Soc. Sec.*, No. 1:20-CV-36, 2021 WL 1169099, at *7 (S.D. Ohio Mar. 29, 2021) ("In the absence of any explanation of the supportability and consistency factors, as the regulations require, the Court is unable to conclude that the ALJ's consideration of Dr. Ghoorkhanian's opinion is supported by substantial evidence."); *Tanya L. v. Comm'r of Soc. Sec.*, No. 3:20-cv-78, 2021 WL 981492, at *4–5 (D. Or. Mar. 16, 2021) ("[T]he ALJ must still 'articulate how [he/she] considered the medical opinions' and 'how persuasive [he/she] find[s] all of the medical opinions.'" (citing 20 C.F.R. §§ 404.1520c(a) and (b)(1))).

As to Dr. Hopko's opinions, the ALJ extensively reviewed his observations and offered analysis as to the consistency factor [Tr. 18 ("[Dr. Hopko's] opinions are internally inconsistent with other psychiatric records, including the claimant's ability to prepare elaborate meals, do housework, and work in her garden.")]. However, the ALJ failed to mention supportability in any regard. *See Pearson v. Comm'r of Soc. Sec.*, No. 1:20-CV-166-HSO-RPM, 2021 WL 3708047, at *5 (S.D. Miss. Aug. 11, 2021), *report and recommendation adopted by*, 2021 WL 3663073 (S.D. Miss. Aug. 18, 2021) ("[T]he ALJ cannot summarize the entire record and summarily conclude that, in light of that record, one medical opinion is persuasive and the other is not persuasive." (citing *Raymond v. Comm'r of Soc. Sec.*, No. 5:19-CV-1313 (ATB), 2021 WL 706645, at *10

23

(N.D. N.Y. Feb. 22, 2021))).  Although the revised regulations are less stringent, the Court finds that the ALJ's complete failure to articulate how he considered the supportability of Dr. Hopko's opinion has left the Court unable to properly review his consideration of the opinion.  *See Todd v. Comm'r of Soc. Sec.*, No. 3:20-cv-1374, 2021WL 2535580, at *7–8 (N.D. Ohio June 3, 2021) (finding that the "ALJ's terse reasoning failed to build an accurate and logical bridge between the evidence and his conclusion" where no discussion of supportability was offered and analysis of the consistency factor was also lacking).  Simply detailing the findings of an opinion without providing any analysis or rationale or even mentioning the supportability factor prevents the Court from finding that the ALJ's analysis of Dr. Hopko's opinion is supported by substantial evidence.  As noted by the Northern District of Ohio, this "error is not harmless because, without fuller explanation, this [C]ourt cannot engage in meaningful review of the ALJ's decision," even if "the ALJ's ultimate conclusion may be supported by substantial evidence."  *Id.* (citing *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009)).

The Commissioner does not reference the supportability factor when discussing the ALJ's evaluation of Dr. Hopko's opinion.  Instead, the Commissioner argues generally that the ALJ's evaluation of Dr. Hopko's opinion was proper under the new standard for evaluating medical opinions and cites to other evidence in the record—including the medical findings of Nurses Mynatt and Delph—to bolster the ALJ's evaluation of Dr. Hopko's opinion.  However, "even when there is substantial evidence, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimants of a substantial right."  *See Fleischer v. Astrue*, 774 F. Supp. 2d, 875, 877 (N.D. Ohio Mar. 1, 2011) (quoting *Rabbers v. Comm'r of Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009)) (internal quotation marks omitted).  The Court cannot uphold the ALJ's decision,

24

"even if there 'is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result.'" *Id.* (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996)). Thus, the Commissioner's citations to other evidence in the record does not remedy the ALJ's failure to build an accurate and logical bridge in this case.

The Court cannot find that the ALJ appropriately weighed Dr. Hopko's opinion in this case under the newly applicable revised regulations, as the ALJ failed to explain how he considered the supportability factor. Therefore, the Court finds that a remand of Plaintiff's case is warranted so that the ALJ may properly articulate how he considered Dr. Hopko's opinion.

## VI.   CONCLUSION

Based on the foregoing, the Court **RECOMMENDS**[2] Plaintiff's Motion for Judgment on the Pleadings [**Doc. 23**] be **GRANTED IN PART and DENIED IN PART**, the Commissioner's Motion for Summary Judgment [**Doc. 25**] be **DENIED**, and that this case be remanded for the ALJ to appropriately consider Dr. Hopko's opinion.

Respectfully Submitted,

Jill E. McCook
United States Magistrate Judge

---

[2] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153–54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir.1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).